**In the Matter of Everett W. GROSS, Bankrupt.**

**No. 3167.**

United States District Court
N. D. Iowa, E. D.
Oct. 31, 1960.

Floyd S. Pearson, Decorah, Iowa, for Fidelity & Deposit Co. of Maryland and the U. S. Fidelity and Guaranty Co.

Thomas C. Lynch, Decorah, Iowa, for Petroleum Trading and Transp. Co.

A. E. Sheridan, Waukon, Iowa, for Everett W. Gross, bankrupt.

GRAVEN, District Judge.

This is a petition of the Fidelity & Deposit Company of Maryland, United States Fidelity and Guaranty Company, and Petroleum Trading and Transport Company to review the ruling of the Referee in Bankruptcy for this District overruling their objections to the discharge of the Bankrupt.

On January 3, 1958, Everett W. Gross made and verified a voluntary petition in bankruptcy. He filed the same in this Court on January 9, 1958. On the same day he was adjudicated a bankrupt and the proceedings were referred to the Referee in Bankruptcy.

In Schedule A–3 of his petition he listed thirty-five unsecured creditors to whom the total sum of $77,873.35 was owing. He listed no assets. Fidelity & Deposit Company of Maryland is listed as a judgment creditor in the amount of $11,988.87; United States Fidelity and Guaranty Company is listed .as a judgment creditor in the amount of $5,177.-53; Petroleum Trading and Transport Company is listed as a creditor upon notes and an unliquidated disputed account in the amount of $15,000.

On June 18, 1958, the Bankrupt filed with the Referee an application asking that the adjudication be vacated and that his petition be dismissed. The three creditors referred to appeared and objected to the granting of that application. The Referee held a hearing on the application. Following the hearing he denied the application. No petition for review or other form of appeal was ever taken by the Bankrupt from such denial, and the time for the review of or appeal from such denial has long since expired.

On December 22 and 23, 1958, an extensive examination of the Bankrupt was had. Thereafter the Bankrupt made application for discharge. The three creditors who petitioned for this review filed objections to such application. On December 17, 1959, another extensive examination of the Bankrupt was had.

The claim of the Fidelity & Deposit Company of Maryland had its origin in a Bankers Blanket Bond issued by it to the Citizens National Bank in Charles City, Iowa. On September 22, 1956, that Company commenced an action in this Court. In its complaint, which was made a part of the record in this proceeding, it was stated that Everett W. Gross had with others during the year of 1955 participated in "check kiting" in connection with motor fuel transactions of the Valley States Oil Company and Hurry Back, Inc., with which he was connected; that such "check kiting" resulted in a loss to the Citizens National Bank in Charles City, Iowa, within the coverage of the Bankers Blanket Bond issued by that Bank; that it had paid that Bank the sum of $11,988.87 for the loss sustained by the latter as a result of the "check kiting" operations; and that the claim of the Bank against Everett W. Gross for such loss was thereafter assigned to it. On October 17, 1957, judgment was rendered by this Court in favor of it and against Everett W. Gross and Hurry Back, Inc., for the sum of $11,-988.87 because of the "check kiting" referred to.

The claim of the United States Fidelity and Guaranty Company had its origin in a Motor Vehicle Fuel Distributors Bond executed by it in behalf of Everett W. Gross individually and the Gross Oil Company in which he was a co-partner. Under the Motor Vehicle Fuel Distributors Bond issued by the United States Fidelity and Guaranty Company, that company agreed to pay the State of Iowa any motor fuel tax collected by Everett W. Gross and the Gross Oil Company but not paid to the State of Iowa by them. On November 22, 1956, the United States Fidelity and Guaranty Company instituted an action against Everett W. Gross and Walter D. Gross individ-

ually and as partners in the Gross Oil Company asking for judgment against them in the sum of $5,177.53. That sum was the amount the United States Fidelity and Guaranty Company had paid to the State of Iowa under its Motor Vehicle Fuel Distributors Bond for motor fuel taxes collected by Everett W. Gross, Walter D. Gross and the Gross Oil Company. Such taxes had been collected by them but had not been remitted to the State of Iowa within the time provided by law. On March 22, 1956, Everett W. Gross confessed judgment in favor of the United States Fidelity and Guaranty Company on the claim declared on in the sum of $5,177.53 with interest at the rate of five per cent from March 6, 1953.

The claim of the Petroleum Trading and Transport Company was for petroleum products sold to the Gross Oil Company and Everett W. Gross. The dealings between that creditor and the Gross Oil Company and Everett W. Gross commenced in 1952. In his petition in bankruptcy Everett W. Gross listed that creditor as being a creditor on notes and an unliquidated disputed account in the amount of $15,000.

All of the objecting creditors made the objection that the Bankrupt had failed to keep books of account or receipts from which his financial condition and business transactions might be ascertained. All of them made the objection that the Bankrupt had knowingly made a false oath concerning a material matter in the bankruptcy proceeding. The Petroleum Trading and Transport Company and the United States Fidelity and Guaranty Company each made the objection that the Bankrupt had secured money or property on credit by means of materially false statements in writing representing his financial condition.

The Fidelity & Deposit Company of Maryland and United States Fidelity and Guaranty Company each made the following objection:

"At the examination of the bankrupt, the bankrupt was uncooperative and evasive and refused to give direct and factual answers to the interrogatories propounded to him, and failed to make a fair and complete disclosure of his financial condition at the time of the filing of his Petition herein, and thus impeded the proper administration of the bankrupt's estate and wrongfully withheld from his creditors pertinent information regarding his financial circumstances."

On April 14, 1960, the Referee overruled all of the objections of the three creditors. That ruling is the subject of this review. On this review the findings of fact of the Referee are to be accepted, unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U. S.C.A. following section 53.

Section 14 of the Bankruptcy Act (11 U.S.C.A. § 32) relates to the matter of discharge. Among the grounds for denial of discharge to a bankrupt are (1) the commission of an offense punishable by imprisonment under Section 152 of 18 U.S.C.A.; (2) the failure to keep or preserve books of account or records from which his financial condition and business transactions might be ascertained, unless the Court deems such acts or failure to have been justified under all of the circumstances of the case; (3) the obtaining of money or property on credit, or obtaining an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition; (4) the failure to answer any material question approved by the Court. Section 152 of Title 18 U.S.C.A., referred to above, provides for punishment by imprisonment of a bankrupt who knowingly and fraudulently makes a false oath in relation to any bankruptcy proceeding.

The first objection of the objectors is stated as follows:

"That the bankrupt has knowingly made a false oath concerning a material matter in this bankruptcy proceeding when in answer to question 1(c) of the sworn debtors petition in bankruptcy, which reads:

'Where else have you resided during the six years immediately preceding the filing of the original petition herein?' the bankrupt answered: 'Nowhere'. That by bankrupt's oral testimony under oath before this referee on December 23, 1958, and by a certified copy of bankrupt's application for admission to the bar of the State of Montana admitted to evidence herein, bankrupt has made sworn statement that beginning in February, 1957, he was a resident of the City of Helena, Montana, a date within six years of date of filing of the petition on January 3, 1958."

The Bankrupt testified at the hearing held on December 22 and 23, 1958, that from about February, 1957, until August, 1957, he was a resident of the State of Montana and that from the last of August, 1957, until March of 1958 he was a resident of Decorah, Iowa. At the hearing referred to, he testified that he was then a resident of the State of Montana, that his address was Box 285, Helena, Montana, and that his occupation was that of a practicing attorney at law in the State of Montana and he then had an office for the practice of law at Billings, Montana. At that hearing he further testified that his family at all times had been in Decorah, Iowa. He further testified his occupation was that of managing an oil company owned by his mother at Decorah, Iowa.

The voluntary petition in bankruptcy prepared and filed by the Bankrupt was made on the form prescribed for such use by the United States Supreme Court. The questions hereinafter set out are questions contained in that form and the answers hereinafter set out are the answers made to those questions by the Bankrupt:

"1. Name and residence.
  "a. What is your full name?
    Everett Walter Gross
  "b. Where do you now reside?
    108 St Lawrence St.
    Decorah, Iowa

  "c. Where else have you resided during the six years immediately preceding the filing of the original petition herein? nowhere

"2. Occupation and income.
  "a. What is your occupation?
    self employed gasoline retailer
  "b. Where are you now employed? (Give the name and address of your employer, or the address at which you carry on your trade or profession, and the length of time you have been so employed.) not presently employed
  "c. Have you been in partnership with anyone, or engaged in any business, during the six years immediately preceding the filing of the original petition herein? (If so, give particulars, including names, dates and places.) Partnership with Walter D. Gross of Decorah Iowa from 1934 until dissolution in Januray /sic/ 1953"

The Referee found that the proof did not adequately support the objection based on the Bankrupt's answer to the question as to where he resided during the six years preceding the filing of his petition. The Referee in that connection stated: "There seemed to be some confusion about the questions of residence and domicile." This Court is unable to hold that the finding of the Referee in connection with that objection was clearly erroneous.

The next objection to be considered is the objection based upon the failure of the Bankrupt to preserve his books of account or records from which his financial condition and business transactions might be ascertained. From 1934 up to January, 1953, the Bankrupt and Walter

D. Gross as co-partners had been engaged in the distribution of petroleum products under the name of the Gross Oil Company. In January, 1953, the Bankrupt took over the interest of Walter D. Gross in that Company. Thereafter and up until 1956 the Bankrupt operated that business as sole proprietor. Shortly prior to January, 1956, the Bankrupt sold the business to the Colonial Oil Company. The indebtedness of the Bankrupt to the three objecting creditors arose out of the business operations of the Bankrupt.

Section 14, sub. c of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c) provides for denial of discharge where the bankrupt "failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case." Prior to the 1926 amendments to the Bankruptcy Act, the Section just referred to contained the words "with intent to conceal." These words were deleted by one of those amendments. Prior to 1938 the Section did not contain the word "preserve". That word was added in the revision of the Bankruptcy Act in 1938.

■ Under the present provisions of the Bankruptcy Act, one who goes into Bankruptcy is subject to having his discharge denied if he has unjustifiably failed to preserve the records from which his financial condition and business transactions may be ascertained, and such failure is not excused because the Bankrupt may have lacked an intent to deceive.

In the present case the Bankrupt did not produce any books or records and none were available for examination by the objectors. In his petition the Bankrupt stated that his income from trade or profession in 1956 was $378.20 and in 1957 was $210.35. He testified that those amounts were received by him for assisting his mother in conducting a business owned by her known as the Gross Oil Transport Company and that he had no need for keeping records of the payments made to him by that Company.

During the year of 1955 and the years preceding it, the Bankrupt was engaged in the distribution of petroleum products on an extensive scale. He was connected with a number of enterprises. He had numerous business transactions including transactions with his relatives. There had been numerous records relating to the transactions of the Gross Oil Company. There also had been records relating to his other activities during the year of 1955 and the preceding years. The Bankrupt testified that after the Gross Oil Company went out of business in 1955 its records and the records relating to his other activities were left in a service station which had been included in the sale to the Colonial Oil Company. The Bankrupt further testified that in the summer or fall of 1956 a service station employee at that station who was referred to by him as a "smart operator" had burned or otherwise destroyed all the records so left. Because the records of the Bankrupt were not produced, it was impossible for the objecting creditors to ascertain the financial condition of the Bankrupt or his business transactions.

Under Section 14, sub. c of the Bankruptcy Act referred to, the failure of a bankrupt to preserve records from which his financial condition and business transactions may be ascertained does not bar his discharge if the Court deems such failure to have been justified under all the circumstances of the case.

It was the view of the Referee that since the Bankrupt had testified as to the destruction of the records and no one testified to the contrary that the objection of the objectors based upon the failure of the Bankrupt to preserve his records should be overruled.

■ It was heretofore noted that it is the duty of a bankrupt to produce his records from which his financial condition and business transactions can be ascertained. There inheres in that duty the obligation to take reasonable precau-

tions for their preservation. What would be reasonable precautions would depend upon the existing conditions and circumstances. The precautions to be taken would vary with the periods covered by the records. If the records related to matters long past, the precautions required to be taken in the matter of preserving them could well be less than in the case of records covering fairly recent periods. If a person was in good financial condition and there was no possibility of bankruptcy, then the precautions taken to preserve business records could well be less than in a case where a person was not so situated.

After 1953, the Gross Oil Company and the Bankrupt were continually in a precarious financial condition. In 1953 they were unable to pay the State of Iowa the fuel tax collected by them. In 1955 the Bankrupt engaged in "check kiting" on a substantial scale. Later judgments were being rendered against them. The potentiality of bankruptcy existed continually after 1954.

The records in question related to business transactions of recent years and the financial condition and business transactions of the Bankrupt during such years. They covered the period during which he had incurred a large amount of indebtedness to many creditors, which indebtedness was still outstanding at the time he filed his petition in bankruptcy.

Because of the financial difficulties the Bankrupt had encountered before 1956 and in the forepart of 1956, the Bankrupt must have realized that his business transactions and financial condition could well be of importance to his creditors. He must also have realized that if his records were not preserved those creditors would have great difficulty in ascertaining those transactions and his financial condition. To allow a bankrupt to take advantage of his failure to take reasonable precautions for the preservation of his business and financial records, under such circumstances, would defeat the purposes of the Bankruptcy Act.

The Bankrupt in this case left the records in a service station being operated by the Colonial Oil Company. So far as appears of record, the Bankrupt made no arrangements with that Company for such storage, nor did he make known to the employees of that Company that there was need of preserving those records. An employee at the service station apparently desired to have out of his way what appeared to be old records, and so he disposed of them.

Because of the potential importance of those records and the probable need of them by creditors, it is the view of the Court that the Bankrupt not only did not take reasonable precautions to preserve them but seemed heedless as to their preservation. Because of the Bankrupt's failure to preserve those records, his creditors did not have available to them the books of account and records from which his financial condition and business transactions might be ascertained. The Bankrupt having failed to take reasonable precautions under the circumstances to preserve the books and records from which his financial condition and business transactions might be ascertained, his failure to preserve them was not justified. It is the view of the Court that the objection of the objectors based upon the failure of the Bankrupt to preserve his records should be sustained and that the overruling of that objection by the Referee was clearly erroneous.

The Fidelity & Deposit Company of Maryland and the United States Fidelity and Guaranty Company each made objection to the discharge of the Bankrupt upon the ground that he had allegedly obtained money or property on credit by a "materially false statement in writing respecting his financial condition." Because of the failure of the Bankrupt to preserve his records, those creditors faced formidable obstacles in the proof of their objections. They were also hampered in the matter of proof because of the difficulties encountered by them in trying to elicit information from the Bankrupt in their examination of him. The Referee found that they had not sustained their burden of proof.

This Court is unable to hold that such finding is clearly erroneous.

Section 7 of the Bankruptcy Act (11 U.S.C.A. § 25) makes it the duty of a bankrupt to

> "submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; * * * "

Section 14, sub. c(6) of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c(6)) provides, in part, that a discharge may be denied where the bankrupt "in the course of a proceeding under this title refused * * * to answer any material question approved by, the court."

The last objection to be considered is the objection based upon this provision. That objection was heretofore set out. While the objection was not stated in the specific language of the provision referred to, it does charge him with refusal to give direct and factual answers to interrogatories propounded to him during the examination of him by the objectors. The Court is of the view and holds that the objection does raise the issue of whether the Bankrupt should be denied a discharge under the provision referred to.

The Bankrupt was examined by the objectors on December 22 and December 23, 1958, and December 17, 1959. The examinations were presided over by the Referee. The Bankrupt was represented by his own attorney throughout all of them. Transcripts were made of those examinations which are a part of the record on this review. The Referee stated as follows in connection with this objection: "The objection that the bankrupt was uncooperative and evasive might have some substance. * * * The Referee thought the Bankrupt was evasive, but this is not ground of denying a discharge."

The examination of the Bankrupt by the attorneys for the objectors was of the hide-and-seek variety. Those attorneys asked him questions relating to his various business transactions, his relations with various enterprises, his dealings with creditors and relatives, and other material matters. The Bankrupt gave them elusive or evasive or equivocal answers. Those attorneys were unable to secure direct and factual answers to material questions put to the Bankrupt by them.

The attorney for the Bankrupt made objections to some of the questions, which objections were overruled. No objections were made to the greater number of the questions. There was no difference in the character of the answers given to questions to which objections were overruled and to those to which no objection was made. No formal approval of questions propounded to a bankrupt is required to make them questions approved by the Court; it is sufficient if the Referee overrules any objections that are made. In re Zaidins, D.C.1960, 182 F.Supp. 543, 545.

The Bankrupt in his brief contends that evasive and disingenuous testimony by a bankrupt is not a ground for a refusal of a discharge. He cites in support of that contention the case of In re Leslie, D.C.1903, 119 F. 406, decided January 3, 1903. That case so holds. However, the decision in that case is not in point on the question as to whether the giving of devious and disingenuous testimony constitutes a refusal to answer within the provisions of the Section referred to, since at the time the decision was rendered the Bankruptcy Act of 1898, 30 Stat. 544, did not contain the provision that refusal of a bankrupt to answer questions was a ground for the refusal of a discharge. That provision was added by amendment on February 5th, 1903, 32 Stat. 797.

In the present case the Referee seemed to be of the view that evasive answers did not come within the scope of the Section referred to. The United States Court of Appeals for this Circuit in the

case of Richardson v. United States, 1959, 273 F.2d 144 at page 147, stated:

" * * * Refusal to disclose information known to a witness by evasive answers can be as obstructive of justice as an outright refusal to testify.

" 'It is indeed impossible logically to distinguish between the case of a downright refusal to testify and that of evasion by obvious subterfuge and mere formal compliance.' United States v. Appel, supra [D.C.], 211 F. 495.

" 'A wily witness who avoids the danger of a blunt refusal to answer by mere lip service to his duty and conceals the truth by the use of words may be as obstructive as his fellow of less mental agility who simply says nothing.' * * * Howard v. United States, supra [8 Cir.], 182 F.2d [908], 913, 915."

While superficially the Bankrupt purported to answer the questions put to him, in fact and in effect they were so evasive that in substance they amounted to a refusal to answer, since the net result of the interrogation was to leave the questioners without any substantial information regarding his affairs and his financial condition. It is the view of the Court that the Bankrupt's answers to material questions put to him by the attorneys for the objectors were so evasive as to constitute a refusal to answer them.

It is the view of the Court that the objection of the objectors based upon the refusal of the Bankrupt to answer material questions should be sustained and that the overruling of that objection by the Referee should be reversed.

It Is Hereby Ordered that the ruling of the Referee overruling the objection of the objectors based upon the claimed making of a false oath by the Bankrupt under Section 14, sub. c(1) of the Bankruptcy Act and its related Section (18 U.S.C.A. § 152) be and the same is hereby affirmed.

It Is Further Ordered that the ruling of the Referee overruling the objection of the objectors based upon the claimed obtaining of money or property on credit under Section 14, sub. c(3) of the Act be and the same is hereby affirmed.

It Is Further Ordered that the ruling of the Referee overruling the objection of the objectors based upon the failure of the Bankrupt to preserve his records under Section 14, sub. c(2) of the Act be and the same is hereby reversed.

It Is Further Ordered that the ruling of the Referee overruling the objection of the objectors based upon the failure of the Bankrupt to answer material questions under Section 14, sub. c(6) of the Act be and the same is hereby reversed.

It Is Further Ordered that the Bankrupt be and he is hereby denied his discharge herein.