In re David C. HARRON and Irene C. Harron, Debtors.

Myles FREHM and Sylvia Frehm, Plaintiffs,

v.

David C. HARRON and Irene C. Harron, Defendants.

FRIEDRICH AIR CONDITIONING & REFRIGERATION, INC., Plaintiff,

v.

David C. HARRON and Irene C. Harron, Defendants.

Bankruptcy No. 5–80–00650.
Adv. Nos. 205–5–81–0085, 205–5–81–0090.

United States Bankruptcy Court,
D. Connecticut.

July 12, 1983.

Daniel Meister, Norwalk, Conn., for defendants.

Roy W. Moore, III, and Thomas E. Lee, Marsh, Day & Calhoun, Bridgeport, Conn., for plaintiff, Friedrich Air Conditioning & Refrigeration, Inc.

Edward B. Winnick, and Ivan M. Katz, Winnick, Resnick, Skolnick & Auerbach, New Haven, Conn., for plaintiff, Myles Frehm and Sylvia Frehm.

MEMORANDUM AND DECISION ON COMPLAINTS OBJECTING TO DEBTORS' DISCHARGE. 11 U.S.C. § 727(a)

ALAN H.W. SHIFF, Bankruptcy Judge.

## I.

### BACKGROUND

This matter comes to the court on the complaints of several creditors objecting to the debtors' discharge. The adversary proceedings were consolidated for trial and will be treated in that manner in this decision.

On September 9, 1980, the debtors filed a petition seeking relief under Chapter 7 of the Bankruptcy Reform Act of 1978. The plaintiffs, Myles and Sylvia Frehm, object to the debtors' discharge, claiming that the debtors transferred or concealed property within one year before the date of filing of their petition with the intent to hinder, delay or defraud a creditor, 11 U.S.C. § 727(a)(2); that they failed to keep or preserve any recorded information from which their financial condition or business transactions might be ascertained, 11 U.S.C. § 727(a)(3); that the debtors knowingly and fraudulently made a false oath or account in or in connection with their case, 11 U.S.C. § 727(a)(4); and that the debtors failed to explain satisfactorily the loss of assets or the deficiency of assets to meet their liabilities, 11 U.S.C. § 727(a)(5).[1] The plaintiff, Friedrich Airconditioning & Refrigeration, Inc. (Friedrich) similarly relies on Code sections 727(a)(2), (3) and (4).

## II.

### DISCUSSION

The rich tradition of justice and equity which has characterized our approach to the

1. 11 U.S.C. § 727 provides in pertinent part
   (a) The court shall grant the debtor a discharge, unless—
   (1) the debtor is not an individual;
   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
   (A) property of the debtor, within one year before the date of the filing of the petition; or
   (B) property of the estate, after the date of the filing of the petition;
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
   (4) the debtor knowingly and fraudulently, in or in connection with the case—
   (A) made a false oath or account;
   (B) presented or used a false claim;
   (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
   (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
   (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

regulation of society through law has long recognized that relief must be provided to the honest debtor who cannot endure the burden of financial distress. The current Bankruptcy Code and its predecessors provide that relief to individual debtors. Under the Code a two fold objective is sought. A debtor who files under Chapter 7 is relieved from his dischargeable debts and is given a fresh start in the form of allowable exemptions while the members of each class of his creditors are assured equal treatment in the distribution of his remaining assets. That balance, however, rests, *inter alia,* upon the premise that the petitioning debtor is honest and is therefore entitled to such relief, and when it can be demonstrated otherwise, the discharge is denied. Code section 727(a) provides the statutory basis for that challenge. As Judge Norton observed:

> A basic premise of a bankruptcy liquidation case is that while the debtor will ordinarily receive the benefits of discharge, the creditors are entitled to fair treatment and pro rata access to the debtor's property. Pursuant to this, the expectation is that, to be entitled to discharge, the debtor must deal fairly with his creditors. This obligation is imposed indirectly through a series of objections to discharge in Code § 727(a). While, in some cases, these objections extend beyond circumstances in which the debtor has, or may have, attempted to deal with his property to injure the creditors, their main thrust in practice is to provide a vehicle under which abusive debtor conduct can be responded to through denial of discharge."

Norton, *Bankruptcy Law and Practice* § 27.16 (1981).

■ Here, as noted, the plaintiffs object to the debtors' discharge on the basis of several subsections of 727(a). The burden of proof rests with the plaintiff-objectors. Bankruptcy Rule 407;[2] *In re Martin,* 554 F.2d 55, 58 n. 1 (2d Cir.1977); *In re Decker,*

595 F.2d 185 (3d Cir.1979); *In re Martin,* 698 F.2d 883 (7th Cir.1983). Furthermore, in keeping with Congressional intent to provide debtors with a fresh start, courts generally construe section 727(a) strictly against the objector and liberally in favor of the debtor.

> "... the primary purpose of the bankruptcy law is to afford debtors a new opportunity in life and a clear field for future efforts, unhampered by the pressure and discouragement of preexisting debts. *Local Loan Company v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). That concept of a "fresh start" is embodied in the Bankruptcy Code and is consistently expressed in the cases construing its diverse provisions. In order that effect may be given to the "fresh start" notion, the provisions of § 727(a) relating to discharge must be liberally construed in favor of the debtors. Any objection to discharge must be based on one or more of the nine specified conditions of § 727(a)—a general charge of dishonest conduct does not suffice."

*In re Reed,* 11 B.R. 683, 685, 8 B.C.D. 31, 33 (Bkrtcy.N.D.Tex.1981). *See also In re Mendoza,* 16 B.R. 990 (Bkrtcy.S.D.Cal.1982); *In re Rubin,* 12 B.R. 436 (Bkrtcy.S.D.N.Y. 1981.)

Having analyzed the pleadings, exhibits and testimony, having observed the witnesses and assessed their credibility, and having considered the arguments of counsel as well as their post trial briefs, I conclude that the plaintiffs have sustained the requisite burden of proof in these proceedings.

### *Records—11 U.S.C. § 727(a)(3)*

■ Code section 727(a)(3) lies at the very heart of the section which limits discharge to honest Chapter 7 debtors. Since creditors must be able to test the accuracy of the statements and schedules contained in a debtor's petition, it follows that debtors must keep and preserve recorded information, including books, documents, records

---

**2.** Bankruptcy Rule 407 provides
  At the trial on a complaint objecting to a discharge, the plaintiff has the burden of

proving the facts essential to his objection.

and papers from which the debtor's financial condition or business transactions may be ascertained.

The purpose of § 727(a)(3) of the Bankruptcy Code, and its predecessor, § 14(c)(2) of the Bankruptcy Act, is to ensure that dependable information is supplied to the Trustee and to creditors on which they can rely in tracing the Debtor's financial history. The Trustee and creditors are entitled to complete and accurate information showing what property has passed through the Debtor's hands during the period prior to his bankruptcy. *In re Mascola,* 505 F.2d 274, 278 (1st Cir.1974) quoting *In re Slocum,* 22 F.2d 282, 285 (2d. Cir.1927).

*In re Devine,* 11 B.R. 487, 488 (Bkrtcy.D. Mass.1981).

The plaintiffs claimed and offered evidence to prove that the debtors failed to keep or preserve adequate records of their financial condition. A significant element of their proof dealt with the three businesses wholly owned by the debtor, David C. Harron (Harron), to wit: 1) David C. Harron Electronics, Inc. (DCHE); 2) David C. Harron Air Conditioning Service Company, Incorporated; and 3) David C. Harron Television and Appliance Repair Service, Inc.

■ It should be mentioned parenthetically that since Harron listed himself as the sole stockholder of each of these corporations, the debtors used the checking accounts of DCHE to pay personal expenses, the debtors' personal and corporate funds were occasionally comingled, and the debtors listed the corporate debt of DCHE on their petition, I find that the corporate veil of these corporations is sufficiently transparent so that the obligation, under Code section 727(a)(3), is a joint obligation of these debtors with respect to those entities.

Included in the proof offered by the plaintiffs was evidence that no corporate records were kept for the air conditioning company. The explanation for this omission was that the corporation was merely a service company which only kept enough funds in its bank account to pay employees.

This explanation falls short of an excuse. Credibility was not one of the attributes conferred upon debtors by the Bankruptcy Code. The creditors, as noted, are entitled to records so they may trace a debtor's cash flow and assets.

Similarly, no records were kept for DCHE after February 1980, approximately six months prepetition, and of the records kept prior to that date, an undetermined amount were allegedly lost. The explanation for the termination of record keeping was that Harron could not afford to pay his accountant. This explanation is also unavailing.

The undisputed evidence is that Harron sold certain assets of DCHE, including its trade name, to LDL in March or April 1980. Significantly, there is no record of this transaction. Subsequent to that sale, Harron continued in business, in the same location, and the uncontroverted evidence is that during the 62 days between June 9, 1980 and August 11, 1980, 200 Friedrich air conditioners, valued at approximately $80,000.00, were disposed of. Again, significantly there is no record of the method or manner of the disposition of those air conditioners. In any event, it would appear that Harron was actively engaged in business, and that he should have and could have kept a record of his business transactions.

To suggest that a debtor's financial condition is a basis for excusing him from the obligation to keep and preserve financial records is to reduce that obligation to a nullity as few, if any, debtors would fail to qualify. The fact of insolvency cannot also be used as an excuse from the obligation to provide records to illuminate that condition.

The explanation regarding the missing corporate records is equally unpersuasive. Harron testified that corporate records were placed in a Sony TV box, sealed, and stored in his garage at his home in Weston, Connecticut. Some time later, when he went to retrieve the records, the box was missing. Harron concluded that a rubbish man must have mistaken the sealed box for rubbish and removed it.

Why a rubbish man would remove a sealed box is difficult to understand. It is even harder to understand why a business-man would keep important records in a TV carton in his garage, particularly where, as here, an inquiry as to the financial affairs of his business was likely. As noted by Judge Lavien, in *In re Devine, supra* at 488:

Even if the Debtor had been keeping appropriate records, his responsibility did not end there. There inheres in the duty to produce records from which the Debt-or's financial condition can be as-certained, the duty to take reasonable precautions for the preservation of these records.

"What would be reasonable precautions would depend upon the existing condi-tions and circumstances. The precautions to be taken would vary with the periods covered by the records. If the records related to matters long past, the precau-tions required to be taken in the matter of preserving them could well be less than in the case of records covering fairly recent periods. If a person was in good financial condition and there was no pos-sibility of bankruptcy, then the precau-tions taken to preserve business records could well be less than in a case where a person was not so situated." *In the Mat-ter of Gross,* 188 F.Supp. 324, 330 (N.D. Iowa 1960).

The debtors' failure to keep and preserve records is magnified by a variety of factors. Included is the failure of DCHE to prepare and file federal, state or New York City tax returns for fiscal 1980. The debtors' prac-tice of utilizing and interchanging a variety of corporate and personal checking accounts, the comingling of corporate and personal funds, the vague, suspicious, and undocumented loan arrangements between DCHE, the debtors and Nicholas N. Cari-das, (Irene C. Harron's father) and between Harron, Sam Levine and Milton Millar. These omissions are made more egregious by the disingenuous quality of significant portions of both debtors' testimony.

Documentary evidence demonstrates that on January 21, 1980 Harron had a net worth of $434,655.00.[3] On September 9, 1980 the debtors filed schedules with their petition which indicated that their net worth was a negative $594,613.24. Even allowing for the duplication of $117,000.00 in liabilities (the debtors listed their corpo-rate liabilities as well as their guarantee of those obligations), it appears that the debt-ors' net worth shrunk over $900,000.00 in a little over eight months. Creditors are enti-tled to adequate records so that the finan-cial transactions or other bases for that reduction can be traced. The debtors' ex-planation that the initial net worth figure of $434,655.00 was inflated[4] does not en-hance Harron's credibility since Harron signed the legend which stated in pertinent part: "PURPOSE: I have given you this financial statement in order to obtain credit or some other benefit from you. I know that you will rely on it and I represent to you that it is correct and truthfully sets forth all of my assets and liabilities, includ-ing all indirect liabilities as of this date." Harron also acknowledged that he under-stood the continuing nature of the financ-ing statement insofar as the lender was to rely on it until it was superseded by another financing statement. Obviously, to the ex-tent Harron succeeds in demonstrating the errors in his financial statement, he must also succeed in demonstrating his lack of credibility.

## III.

### CONCLUSION

I find that the debtors failed to keep and preserve sufficient records from which their financial condition or business transactions might be ascertained and that their failure to do so cannot be justified under the cir-cumstances of this case. Since this conclu-

---

3. PL. Friedrich Ex. M–1. This amount includes jointly owned real and personal property as well as joint liabilities.

4. Harron claims that the real estate and David C. Harron Electronics, Inc.'s net worth figures were not accurate on plaintiff Friedrich's Ex-hibit M–1. Defendant's Brief, Adv.Pro. 81–085, p. 24.

sion is dispositive of both complaints objecting to the debtors' discharge, I need not address the remaining allegations.

Accordingly, the plaintiffs' objection to the debtors' discharge must be, and hereby is, sustained, and judgment shall enter accordingly.