In re Dale Edward **KOTTWITZ**, Debtor.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Dale Edward KOTTWITZ, Defendant.**

**Bankruptcy No. 83–01104–C.
Adv. No. 83–0923–C.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

Sept. 17, 1984.

R.L. Veit, Jefferson City, Mo., for debtor/defendant.

P. Dennis Barks, Hermann, Mo., for plaintiff.

### MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Chief Judge.

This matter is before the Court pursuant to plaintiff's Complaint that the debt between the parties be adjudged nondischargeable or that defendant should be denied a discharge. Count I objects to the discharge of the debtor under 11 U.S.C. § 727 of the Bankruptcy Code based upon the debtor's intention to hinder, delay or defraud his creditors, making a false oath, and failure to keep and preserve books, records, documents and papers from which

his financial condition might be ascertained. In the alternative, Count II seeks an exception to discharge under 11 U.S.C. § 523 for the claim of $13,725.39 plus interest at 11.4 percent per annum because the debtor willfully and maliciously converted numerous items of livestock for his own use without accounting for the proceeds and because the debtor made false representations to the bank in order to obtain the loan. The trial was held before this Court on March 7, 1984 and April 25, 1984. The decision of this Court is based upon the violation of section 727 because plaintiff failed to meet its stringent burden of proof under the section 523 theories.

## FINDINGS OF FACT

Dale Edward Kottwitz, Debtor/Defendant, (hereinafter Kottwitz), obtained seven (7) loans from the Belle-Bland Bank. The loans were obtained from April 9, 1979 to September 17, 1979 amounting to $9,943.90 plus interest ranging from 10 to 11½ per cent. The collateral for the notes included livestock, horses and saddles. Payments were made on these notes reducing the principal to $8,775.38. On November 6, 1979, a new consolidation note was executed in the principal amount of $15,631,86 with the interest rate at 11.4 per cent per annum. This three month consolidation note was initiated by the Bank because Kottwitz was in arrears on his other notes. (TR 65). The security agreement and financing statement were executed simultaneously with the collateral from the smaller notes carried forward and new collateral pledged. Payments were made on the consolidation note.

On July 2, 1982, the Division of Finance of the State of Missouri determined that Belle-Bland Bank was insolvent. After the Commissioner of the Division of Finance ordered the bank closed, the Federal Deposit Insurance Corporation (hereinafter FDIC) was appointed and accepted receivership of the Bank. FDIC is now the holder of the Kottwitz note.

Kottwitz filed for voluntary relief under Chapter 7 of the Bankruptcy Code on April 21, 1983. His only debt scheduled is the note to Belle-Bland Bank.

There are several factual problems surrounding this consolidation note. First, it is unclear whether Kottwitz owned the collateral at the time when the consolidation note was made. Kottwitz testified that he definitely owned one registered Appaloosa gelding valued at $625 and one bay mare and mule colt valued at $300. The remaining eighty-nine (89) pieces of collateral totalling $17,832.50, Kottwitz either did not own or did now know whether he owned them at the time of the execution of the consolidation note. Michael Bredeman, former Vice President of Belle-Bland Bank, testified that he relied upon Kottwitz's statements of ownership at the time of both extending and renewing credit. (TR 52). Additional collateral was pledged with the new note, based upon the debtor's statement of ownership. Bredeman even made physical inspections of Kottwitz's pasture land and residence attempting to confirm the debtor's statements. (TR 53).

Kottwitz contends that he is uncertain regarding ownership of the collateral because he had sold or traded several items of collateral. This contention is rather flimsy for two reasons; first, no intelligible receipts were maintained relating to the sale of any collateral; second, when additional collateral was pledged, Kottwitz informed Bredeman that he owned the collateral. However, when asked under oath if he did in fact own the specific piece of collateral, he uniformly answered that he either did not know or that he simply never owned the collateral. (TR 21–23).

Second, Kottwitz failed to maintain many records involving the disposition of his collateral or the payments made on his notes. When asked whether he had records regarding the disposition, Kottwitz typically testified "no". When he did produce a receipt, it was impossible to decipher what the receipt represented and how much of the amount on the receipt corresponded to the specific value of an item of collateral. (TR 18–23). The debtor's records were

maintained in an unintelligible and unorganized manner.

◼ Finally, there is a question as to the amount owing. Debtor contends that he owes only $8,775, while the FDIC claims that he owes $13,725.39. This discrepancy arises because Kottwitz alleges that he signed a blank note. (TR 41). The Vice President of the bank, who witnessed the signing, testified that the note was completed when signed. (TR 48). Nevertheless Kottwitz did receive a completed copy of the note in the mail; but he failed to read it. (TR 42). With the receipt of the copy, Kottwitz had all the information regarding the terms of the note and is estopped from crying foul or pleading ignorance as to the amount.

◼ The FDIC supports its position regarding the amount of the loan by producing computer print-outs characterizing all the bank transactions and copies of deposit slips for Kottwitz's checking account. The print-out relating to the note clearly indicates that the original principal on the note was $15,631.89 at 11.4 per cent interest with several payments made reducing the principal to $13,725.39. Additionally, both records demonstrate that on the date the note was executed $7,199.65 was deposited into his checking account. (Ex. 5A). It is very clear to this Court that additional funds were advanced, thus, the claim for $13,725.39 is allowed.

## CONCLUSIONS OF LAW

Plaintiff alleges that Kottwitz failed to maintain adequate books and records thereby violating 11 U.S.C. § 727(a)(3) of the Bankruptcy Code which states that:

"(a) the court shall grant the debtor a discharge unless

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers from which the debtor's financial condition or business transactions might be ascertained un-

less such act was justified under all of the circumstances of the case...."

This Code section "lies at the very heart of the section which limits discharge to honest Chapter 7 debtors." *In re Harron*, 31 B.R. 466, 468 (Bkrptcy D.Conn.1983). More specifically:

"[t]he purpose of § 727(a)(3) of the Bankruptcy Code and its predecessor, § 14(c)(2) of the Bankruptcy Act, is to ensure that dependable information is supplied to the Trustee and to creditors on which they can rely in tracing the debtor's financial history. The Trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands during the period prior to his bankruptcy. *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974) quoting *In re Slocum*, 22 F.2d 282, 285 (2nd Cir.1927)" *In re Devine*, 11 B.R. 487, 488 (Bkrptcy D.Mass.1981); *In re Harron*, 31 B.R. at 469.

◼ In short, a prerequisite to the granting of a discharge in bankruptcy is for the bankrupt to keep and preserve books and records in an intelligent fashion in order to enable the Court to ascertain the debtor's financial history and record. *Matter of Borron*, 29 B.R. 122 (Bkrptcy W.D.MO 1983); Accord, *Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1018 (D.N.J.1983); *In re Frank*, 14 B.R. 166, 168 (Bkrptcy S.D.Fla. 1981). However, "[e]ven if the debtor had been keeping appropriate records, his responsibility did not end there. There inheres in the duty to produce records from which the debtor's financial condition can be ascertained, the duty to take reasonable precautions for the preservation of these records." *In re Devine, supra,* 11 B.R. at 488; *In re Harron, supra,* 31 B.R. at 470. Reasonable precautions are determined by the facts and circumstances of each case.

◼ The plaintiff has the burden of proving his objection. Bankruptcy Rule 4005. However, "[o]nce the moving party shows that the debtor has destroyed or failed to produce records and that a demand for an explanation was made, the burden shifts to

the debtor to justify the destruction or failure to produce records." *In re Hyder*, 38 B.R. 467, 471 (Bkrptcy D.Mass.1984). See, Advisory Committee Notes to the Bankruptcy Rule 4005.

In the case at bar, FDIC on numerous occasions requested records of ownership and disposition of collateral and records regarding payments made on the notes. Kottwitz failed to produce these records for one registered Tennessee walking mule and colt (TR 10), one sorrel mare (TR 11); one black gelding (TR 12); one registered Appaloosa gelding (TR 13), one white mare and mule colt (TR 16); one buckskin mare (TR 17), one bay mare and mule colt (TR 18); and one bay mare (TR 19). When asked specifically whether he could produce any evidence demonstrating where the proceeds were applied, Kottwitz answered "no". (TR 40). He also was unable to produce any records regarding payments on the notes. (TR 24).

Debtor did claim ability to produce records regarding one registered sorrel gelding, three sorrel mares, one bay mare, one registered Appaloosa mare, fifteen mixed sows, fifteen mixed yearlings, seven mixed cows, four boars, twenty-nine mixed shoats and pigs and one mule. (TR 15–23). When pressed on this issue, Kottwitz produced a "handful of deposit tickets", but there was no way to correlate the ticket to specific items of collateral. (TR 30). For example, one ticket represented the sale of fifty pigs of which only one pig was collateral for the note.

■■■ Clearly the debtor has not maintained adequate records to allow creditors intelligently to ascertain his financial history. The debtor has a burden to take reasonable precautions to preserve the documentation or at the very least, justify the absence of the records. Not retaining receipts for collateral sold is an unreasonable act because when one borrows money based upon a security agreement, a duty is established to care for the collateral and notify the secured party of any disposition. This Court acknowledges that the debtor is not required to maintain absolutely perfect records. However, the Bankruptcy Court has reasonably wide discretion in determining whether the books and records produced are sufficient. *Broad Nat'l Bank v. Kadison*, 26 B.R. at 1017. The Court finds that the combination of the debtor's suspiciously vague testimony and his failure to produce many essential records violates section 727(a)(3) of the Bankruptcy Code.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the Debtor's discharge in bankruptcy be, and it is hereby DENIED.