In re Catherine Tyree PARKER, fka Catherine Anne Tyree, Debtor.

SECOND NATIONAL BANK and Douglas C. Carter, Plaintiffs,

v.

Catherine Anne Tyree PARKER and Robert E. Hyman, as (interim) trustee herein, and his successors in office,[1] Defendants.

Bankruptcy No. 86–00701–R.
Adv. P. No. 86–0454–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 25, 1988.

---

1. Robert E. Hyman was appointed interim trustee, however, after a request for an election of a trustee was made pursuant to 11 U.S.C. § 702, Charles R. Jaeger was elected Trustee. It should be noted that a trustee is an inappropriate and unnecessary defendant in an action instituted under 11 U.S.C. § 727.

David C. Dickey, Stanardsville, Va., for plaintiffs.

Robert A. Canfield, Richmond, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

On the motion of Second National Bank and Douglas C. Carter, plaintiffs in a related adversary proceeding numbered 86–0454–R, and the Trustee, Charles R. Jaeger ("Trustee"), plaintiff in a related adversary proceeding numbered 87–0106–R, and the defendant in both such proceedings not objecting, it was Ordered that the two adversary proceedings be consolidated into one proceeding recognized by the Adversary Proceeding Number 86–0454–R. The plaintiffs in this adversary proceeding have objected to the discharge of the debtor, Cath-

erine Tyree Parker ("Tyree"), under 11 U.S.C. § 727(a)(2), (3) and (4) and after a trial having been convened on the matter on September 15, 1987 and oral arguments presented on January 12, 1988, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The testimony from the trial reflects that the bulk of the debt owed by the debtor, $44,000, was incurred as a consequence of Tyree having co-signed several notes held with her husband, C. Waverly Parker, Jr. ("Parker"). The arrangements for receiving the loans were made by Parker's father and the loans were used to pay for Parker's education expenses, as well as, the living expenses of the couple that exceeded Tyree's salary. Tyree first became liable for a portion of the debt, some of which had already been incurred by Parker, in 1983 before their marriage and after Parker's father conditioned his guaranteeing additional financing for his son's education on Tyree's becoming a co-signor on the notes. The amounts of the loans increased while Parker attended school and were renewed until 1986 when the couple separated.

The plaintiffs cite numerous areas of alleged wrong-doing as grounds for denying the debtor a discharge in her bankruptcy case. The first area concerns Tyree's failure to include her mother's checking account, which she had access to, in her statement of affairs and her subsequent failure to reveal it when later asked about unlisted assets. Two sets of checks were available on the mother's account, one with only the mother's name and another with only Tyree's name. Tyree had her own checkbook and wrote over 400 checks on the account. However, she alleges that whenever a check was written, it was with her mother's permission. Tyree did not recall making any deposits into the account herself.

Another ground the plaintiff cites for denying a discharge concerns Tyree's failure to mention as assets of her bankruptcy estate the rental deposits made for the house on New Kent Avenue shared with Parker and her current residence at Oakhurst Manor Apartments. Tyree's failure to include the rent deposits on her schedules occurred despite the existence of a section of the official bankruptcy forms requiring information on any rental deposits that were being held. Tyree claims that she was unaware of the need to report such deposits and did not consider the deposits to be assets. The evidence reflects that at the time Tyree had filed her bankruptcy petition, she had not made a deposit on the Oakhurst apartment.

The plaintiffs also charge that Tyree destroyed and mutilated recorded information from which the debtor's financial condition might have been ascertained. The information in question concerns ledger sheets containing Tyree's planned expenditures for a four month period. The records were produced as a result of the Trustee's request for documents reflecting the debtor's financial transactions. In responding to the Trustee's request, the debtor submitted the ledgers she had maintained until April of 1986. The records reflecting her bills for the months of May and June were torn from the last four month ledger that was submitted. The defendant's reason for tearing off the last two months, she testified, resulted from the Trustee limiting his request for documents for the period up until the filing of her bankruptcy, which occurred in April of 1986. After removing her expenditures for the months of May and June from the ledger tendered to the Trustee, the defendant transcribed her payments onto a new sheet. The new sheet was subsequently turned over to the plaintiffs.

Another area that is presented as a ground for denying the defendant's discharge concerns the failure to disclose payments made to Tyree's mother on a $2,200 loan within one year of her filing her petition in bankruptcy. Tyree asserts that only a couple of hundred dollars was ever paid to her mother and she states that her failure to report the transfers was caused by an oversight on her part, however, Tyree did schedule the debt as an unsecured liability on her bankruptcy petition.

Further charges raised by the plaintiffs consist of a litany of alleged misconduct by the defendant with regard to her bankruptcy case. One of the accusations involved the defendant's asserted misrepresentation of the value of her car on her bankruptcy petition. On her petition, Tyree stated the value of her car to be $400. Tyree testified that she based this value on what the City of Richmond had assessed the car for that year. In a subsequent trade-in of the car, Tyree was told that she would be paid $500 for her trade-in and that she would receive a $500 discount on her new car. The plaintiffs allege that the defendant misrepresented the value of the automobile because the papers associated with the purchase reflected that Tyree received $1,000 as the trade-in allowance for her old car.

Additional objections raised by the plaintiffs concern the possession of various articles of furniture, china and silverware reported on the debtor's schedules as being owned by another person but no evidence was ever presented that refutes the debtor's assertion. Final questions were raised about items such as a wastebasket, wall ornaments, pictures, and various other minor household appliances and decorations that the defendant failed to include in her schedules as being her property or having been given to her former husband. The defendant testified that the reason she left these items from her schedules resulted from the fact that they had been in storage and were not in front of her where she could itemize them. With regard to the items given to her former husband, the defendant stated that she made what she felt to be a fair division of the couple's property. It should be noted that all of the said items left off the debtor's schedules were capable of being treated as exempt property and that $2,100 of the debtor's $5,000 homestead exemption remained after she exempted those household articles she included in her schedules as personal property.

## CONCLUSIONS OF LAW

■ Bankruptcy Rule 4005 states that the plaintiff has the burden of proof in a complaint objecting to a debtor's discharge under § 727. A split of authority exists, however, over whether only a preponderance of the evidence (*see Francis v. Riso,* (*In re Riso*) 74 B.R. 750 (Bankr.D.N.H. 1987); *Conti–Commodity Services, Inc. v. Clausen,* (*In re Clausen*) 44 B.R. 41 (Bankr.D.Minn.1984)) is necessary to sustain this burden or whether clear and convincing evidence must be shown. *Booth v. Booth,* (*In re Booth*) 70 B.R. 391 (Bankr.D. Colo.1987); *Taylor v. Lineberry,* (*In re Lineberry*) 55 B.R. 510 (Bankr.W.D.Ky. 1985). The Fourth Circuit Court of Appeals' recent decision in *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988), however, held that the standard of proof necessary to establish an exception to the dischargeability of a debt under § 523 was a preponderance of the evidence. The Court stated that because the Code does not state a level of proof, "[i]n the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings." Since the Code similarly does not state the level of proof necessary under § 727, based on the Fourth Circuit's reasoning in *Combs,* this Court must find that a complaint objecting to the discharge of a debtor must also be proven by a preponderance of the evidence.

The first basis the plaintiffs assert for denying the defendant a discharge is that the debtor, with intent to hinder, delay, or defraud a creditor of the estate, has transferred, removed, and concealed property both after the filing of her bankruptcy petition, as well as within one year before such filing. 11 U.S.C. § 727(a)(2)(A) and (B). The cases interpreting § 727(a)(2) have held that actual intent to hinder, delay, or defraud must be shown and that actual intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Devers v. Bank of Sheridan, Mont.,* (*In re Devers*) 759 F.2d 751 (9th Cir.1985); *Bank of Penn. v. Adlman,* (*In re Adlman*) 541 F.2d 999, 1003 (2d Cir.1976). The statute is to be liberally construed in favor of the debtor and strictly against the objector. *Id.*

388

■ The plaintiffs allege that the debtor intentionally concealed and transferred various household articles in an attempt to defraud creditors. The items the plaintiffs are concerned with involve such articles as wastebaskets, curtains, games, a popcorn popper, etc. The defendant testified that she failed to include all such items in her bankruptcy schedules because some of her possessions were in storage and, therefore, she was unable to remember everything she had. The defendant also testified that other items were not included on her schedules because they were left with her husband as part of a property settlement related to a marital separation that led to a divorce. No evidence was presented by the plaintiffs contradicting the defendant's testimony and no other evidence was ever submitted that showed that the defendant ever intended to hinder, delay, or defraud a creditor of the estate. In addition, the deminimus value of the items, as well as the fact that all the items could have been exempted, refutes any showing of actual intent based on circumstantial evidence to hinder, delay, or defraud. Therefore, the plaintiffs' charges under § 727(a)(2) must fail.

■ The second charge raised by the plaintiff is that the defendant concealed, destroyed, mutilated and failed to keep and preserve certain recorded information from which her financial condition and business transactions might be ascertained. U.S.C. § 727(a)(3). As cited by several courts:

[t]he purpose of § 727(a)(3) of the Bankruptcy Code and its predecessor, § 14(c)(2) of the Bankruptcy Act, is to ensure that dependable information is supplied to the Trustee and to creditors on which they can rely in tracing the debtor's financial history. The Trustee and creditors are entitled to complete accurate information showing what property has passed through the debtors' hands during the period prior to bankruptcy.

*Federal Deposit Ins. Corp. v. Kottwitz, (In re Kottwitz)*, 42 B.R. 566, 569 (Bankr.W.D. Mo.1984). The bankruptcy court in determining whether the books and records produced are sufficient to trace the debtor's financial history has reasonably wide discretion. *In re Kottwitz*, 42 B.R. at 570; *Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1017 (Bankr.D.N.J.1983).

■ In the matter currently before the Court, it cannot be found that the defendant's actions have prevented a complete and accurate picture of her financial transactions from being obtained. Considering the size of her estate, the documents that have been produced by Tyree adequately account for funds she has received and has dispersed and do not need supplementation. The argument raised by the plaintiffs that the defendant by tearing off two months of one four month ledger prevented a full account of Tyree's transactions is without merit since she transcribed the figures onto a new ledger that was subsequently produced. The fact that the defendant may have intentionally changed some figures in transcribing the amounts is not a sufficient reason for denying a discharge without additional proof since Tyree could have altered any of the ledger sheets by recopying the entire page and submitting it as the original. For this reason alone, the plaintiffs' charges under § 727(a)(3) must fail. However, it might be added that the defendant's reason for tearing off the last two months of one of the ledgers was not to prevent an accurate account of her financial condition from being made, but instead resulted from her understanding that the trustee had limited his request for financial records to the period up until her filing of bankruptcy in April of 1986.

■ The third allegation raised by the plaintiffs is that the defendant knowingly and fraudulently in or in connection with her bankruptcy case, made false oaths and accounts. 11 U.S.C. § 727(a)(4)(A). The plaintiffs object to the debtor's discharge under § 727(a)(4)(A) on four bases: that the debtor made false oaths and accounts in: 1) her Chapter 7 statement of affairs; 2) her Chapter 7 Schedules A and B; 3) her first meeting of creditors; and 4) her deposition taken in the case on July 30, 1986. In order for an objector to sustain his burden of proof, he must show that there was

actual fraudulent intent, which means an actual intent by the debtor to hinder, delay, or defraud his or her creditors. *Randolph v. Somerville, (In re Somerville )* 73 B.R. 826, 835 (Bankr.E.D.Pa.1987). For a false statement to be established, it must also be shown that such a statement relates to a material matter. *In re Somerville,* 73 B.R. at 835; *Sprague, Thall, and Albert v. Woerner, (In re Woerner )* 66 B.R. 964, 972 (Bankr.E.D.Pa.1986); *In re Steiker,* 380 F.2d 765, 768 (3d Cir.1967). Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial. *Id.*

In *In re Woerner,* 66 B.R. at 972, the plaintiff alleged that the debtor knowingly and fraudulently made false oaths or accounts in connection with his bankruptcy case. The facts of *In re Woerner* are very similar to the facts presently before the Court except that the value of the property in question in *In re Woerner* was of more significance. In *In re Woerner* the plaintiff showed that the debtor failed to list certain camera equipment purchased just prior to the filing of bankruptcy, a pension plan valued at $2,534.14, a profit-sharing plan valued at $4,491.79, $98.85 on deposit with a bank, and an itemization of personal property. Additional false oaths were alleged regarding the denial of the existence of the same property in connection with the meeting of creditors and the taking of depositions. The court held that such omissions did not rise to the level of being material and declined to deny the debtor a discharge. *In re Woerner,* 66 B.R. at 973.

In the case currently before the Court, it cannot be found that the plaintiff has sustained its burden of proving either that the debtor acted fraudulently or that the items regarding the false oaths or accounts were material to the debtor's bankruptcy case. The plaintiffs in charging that the debtor knowingly and fraudulently made false oaths or accounts have presented a wide array of allegations. The plaintiffs' assertions include: 1) that the debtor failed to list in her statement of affairs a bank account that was in her and her mother's name; 2) that the debtor failed to list the account numbers of several bank accounts as required by the statement of affairs; 3) that the debtor failed to properly list and identify financial records; 4) that the debtor improperly stated that certain property was owned by another; 5) that the debtor failed to list the transfer of property to her former husband; 6) that the debtor failed to list household items in her bankruptcy schedules; 7) that the debtor testified at her meeting of creditors and at a deposition that she had listed all her personal property in her bankruptcy schedules; 8) that the debtor failed to list rent deposits; and 9) that the debtor failed to report payments on a debt.

■ In reviewing the assertions by the plaintiffs, the evidence reflects that the debtor did not act knowingly or fraudulently and that the allegations presented are of a trivial nature and cannot be found to materially affect the debtor's bankruptcy case. *In re Woerner,* 66 B.R. at 972. With regard to the bank account in the name of the debtor and her mother, the evidence reflects that the account was "maintained" by the mother, that few, if any, deposits were ever made by Tyree, that Tyree's access to the account was limited, and that Tyree did not intentionally fail to list the account on her statement of affairs. Based on this evidence, it cannot be found that the account materially affected the estate or that the debtor acted willfully in omitting it.

■ The allegations made by the plaintiffs concerning the defendant's failure to report in her schedules the numbers under which her bank accounts were maintained by her banks and her failure to properly list and identify financial records also lack a showing of fraudulent intent and can be considered to be immaterial to the estate since the assets of the accounts could be determined without bank account numbers and since the financial transactions of the debtor could be determined despite the debtor's alleged failure to properly list and report her financial records. The plaintiffs' charge that the debtor improperly listed certain property, including a silver and china service and pine furniture, as being in her possession but owned by an-

other also must fail since it was not shown that the value of the items were such that they would materially benefit the estate and since it was not proven that those persons listed as the owners actually were not the true owners. Without a showing by the plaintiffs that Tyree is the true owner of the items, fraudulent conduct cannot be found.

With regard to the household goods transferred to the debtor's former husband, as well as the household goods left off the schedules and not testified to in the creditors' meeting and at deposition, this Court has previously reflected on the property's diminimus value and, therefore, cannot find that they would materially benefit the estate. Similarly, the evidence reflects that only one rent deposit of $450 had been made at the time the debtor filed bankruptcy and that the actual ownership of that deposit was in dispute since it was made on the apartment shared while the couple was married. With respect to the debtor making payments to her mother on a $2,200 loan, the Court finds that only $200 had been paid at the time bankruptcy was filed and that such amount is immaterial to the bankruptcy estate. The plaintiffs' have also made various additional allegations concerning the value of the debtor's traded-in automobile and the debtor's intent to hinder or delay the bankruptcy creditors by withholding financial statements which are of no merit and are of little or no consequence to the estate and the bankruptcy proceeding. Therefore, because of the incidental value and nature of the above mentioned matters to the debtor's bankruptcy case, and because the Court cannot find that sufficient evidence has been presented to show that the debtor acted knowingly and frauduently, this Court cannot find sufficient grounds to deny the debtor a discharge.

Accordingly, for the reasons stated above, judgment must be entered in favor of Catherine Tyree Parker with regard to this action.

An appropriate Order will issue.