**In re Walter William MARTINEZ, Debtor.**

**STATE BANK OF ALBANY, Plaintiff,**

v.

**Walter William MARTINEZ, Defendant.**

**Bankruptcy No. 83–57.**
**Adv. No. 83–0052.**

United States Bankruptcy Court,
D. Vermont.

June 21, 1983.

Richard Darby, Waterbury, Vt., for plaintiff, State Bank of Albany.

Theodore Corsones, Rutland, Vt., for debtor.

Alan R. Medor, Rutland, Vt., trustee, pro se.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

In this adversary proceeding the State Bank of Albany filed a Complaint Objecting to the Discharge of the debtor. It alleges

that under the Vermont Fraudulent Conveyance Act, 9 V.S.A. § 2281, et seq., fraudulent and deceitful conveyances of property to avoid a debt are null and void as to the creditor, and the trustee in bankruptcy, under § 544(b) of the Bankruptcy Code, may avoid any such conveyances; that since June 28, 1978 the debtor transferred income-producing assets to his wife and/or children, and that said transfers are fraudulent and deceitful as to the Bank, and were made to avoid satisfying a judgment obtained by the plaintiff in Rutland Superior Court, in the sum of $32,496.96 with interest, which Judgment was obtained on December 14, 1981.

## THE FACTS

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 1, 1983, and listed as one of his unsecured creditors, plaintiff, State Bank of Albany, in the sum of $42,000.00. He is presently employed at the Central Vermont Public Service Corporation on an annual salary of $43,000.00, and his wife does not work.

The plaintiff did, on December 14, 1981, obtain a Judgment in Rutland Superior Court against the debtor and one John J. Socinski, in the total sum of $32,496.96 with interest at the rate of 12% on $29,812.58 from and after November 3, 1981. In an attempt to collect on this Judgment the plaintiff filed a Motion for Trustee Process against the earnings of the debtor, and the Rutland Superior Court did, on November 22, 1982, enter Findings of Facts, Conclusions of Law and an Order requiring the sum of $126.00 per week be withheld by the Central Vermont Public Service Corporation from the earnings of the debtor and delivered to the plaintiff bank.

Prior to May, 1980, the debtor and his wife were the joint owners of certain bank accounts. Most of the proceeds in these accounts represented deposits made by the debtor's wife, and they included alimony payments she was receiving from her former husband as well as an inheritance of several thousands of dollars. When the debtor married his present wife in 1962 he had a net worth of $100.00 whereas his wife had assets totalling between $7,000.00 and $8,000.00. In May, 1980, the debtor's wife, unbeknown to him, transferred the monies in the joint bank accounts to herself and daughter, as part of an estate plan to protect herself and children. Her reason for doing this was that she did not approve a business venture in which the debtor was involved because she thought he was squandering the family savings. The debtor did, in fact, use up between $25,000.00 and $30,000.00 from the joint bank accounts as an investment in a business which subsequently went sour.

The family finances were managed by the debtor's wife who was the bookkeeper and it was she who developed the estate plan for herself and children. She took the debtor's name off the joint checking account in 1981 and in the fall of 1981 a gift of $2,500.00 each was made to their children. Prior to that time they had continuously made gifts to the children.

Debtor's wife also took his name off the registration of a vehicle which they owned, arranged for the transfer of a boat worth about $6,000.00 with an outboard motor to herself, took sole title to a trailer which was jointly owned with the transfer occurring in 1981 and the wife doing all of the paperwork.

In 1979 the debtor and his wife jointly owned a camp at Lake Bomoseen which was worth $35,000.00 and, upon the insistence of his wife, the debtor signed a deed transferring this property to his wife and one of his daughters. She also made plans for the transfer of certain stocks the debtor held in Central Vermont Public Service Corporation to herself as well as for the issuance of stock which the debtor acquired through the payroll plan to her daughter. The sum deducted for this stock from the earnings of the debtor was $7.50 a week.

The debtor's wife also recovered a sum of money from a personal injury claim which, at the time, was added to the family coffers.

## DISCUSSION

The objection of the plaintiff to the discharge of the debtor is predicated on the "Fraudulent Conveyances" Act of this state, specifically 9 V.S.A. § 2281 which reads as follows:

"Fraudulent and deceitful conveyances of houses, lands, tenements or hereditaments, or of goods and chattels, and all bonds, bills, notes, contracts and agreements, all actions, judgments and executions, made or had to avoid a right, debt or duty of another person, shall, as against the party only whose right, debt or duty is attempted to be avoided, his heirs, executors, administrators and assigns, be null and void."

The plaintiff alleges that under § 544(b) of the Bankruptcy Code, the trustee may avoid transfers and conveyances made by the debtor's wife. It is, therefore, apparently presumed that this constitutes a ground for objecting to the discharge of the debtor. The Bank misinterprets the meaning of the statute. § 2281 merely gives a party whose right, debt or duty is attempted to be avoided by the fraudulent and deceitful conveyance, the remedy of having such conveyance declared null and void.

The grounds for refusing the debtor a discharge are enumerated under § 727 of the Bankruptcy Code and the only one which would appear to be pertinent to the instant case appears in this section under subparagraphs (a)(2) and reads as follows:

The court shall grant the debtor a discharge, "unless the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition."

■ It is quite apparent that none of the transfers of the property in question occurred after the date of the filing of the petition and it also appears that most of the transfers, if not all of them, occurred more than one year before the debtor filed his petition for relief on April 1, 1983. The record indicates that some of them were made in 1982 but the bank has failed to establish that they took place later than April 1, 1982 which would bring them within one year before the filing. Such being the case the bank has failed to sustain a ground for denying the debtor a discharge.

■ Overriding all other considerations, it is quite apparent that the necessary fraudulent intent required under § 727(a)(2) of the Code has not been established. This section is derived from § 14(c)(4) of the Bankruptcy Act and the elements of "intent to hinder, delay or defraud" on the part of the debtor remain the same under § 727(a)(2). This intent must be an actual fraudulent intent as distinguished from constructive intent. Collier's, 15th Ed., § 727.02(3) at page 727–8.

■ In the instant case all of the property transferred was owned jointly by the debtor and his wife as an estate by the entirety and most of it constituted bank accounts which were subject to withdrawal by either spouse. The uncontradicted testimony of the debtor was that all of the transfers were made by the wife, some of them unbeknown to him, for the sole purpose of protecting the family against the squandering of assets by the debtor who had already invested about $30,000.00 in a business which went sour. Although the evidence did not disclose whether the suit by the State Bank of Albany against the debtor and John J. Socinski, in which the Judgment was entered, arose from an obligation incurred by both of them in the business which went sour, it would at least be a fair presumption.

The cottage real estate at Lake Bomoseen was owned as an estate by the entirety by the debtor and his wife. Under such an ownership the property could not be held to respond to a Judgment obtained for his

individual debt. *Pettengill v. U.S., 205 F.Supp. 10.* This state recognizes that personal property may be held by a husband and wife as an estate by the entirety and it has been held that where personal property, purchased by a husband and wife from earnings of a farm, held by them as tenants by the entirety, and by earnings of the wife, is not attachable for debts of the husband and his creditors cannot complain of a transfer of the husband's interest therein to his wife. *Corey v. McLean and Trustee, 100 Vt. 90, 135 A. 10.*

■ The Court also notes that the burden of proving a debt comes within the statutory exceptions is upon the party opposing the discharge. *In Re Danns, 558 F.2d 114, at 116 (2d Cir.1977); In Re Hallman (U.S. Bankruptcy Court—W.D.Va.1981) 12 B.R. 502.* In Hallman, the Court also observed that fraud is never presumed but must be proved by clear, cogent, and convincing evidence as to all material and essential facts.

From the evidence in this case it is clear that the plaintiff has failed to establish a ground for denying the debtor his discharge within the purview of § 727 of the Bankruptcy Code. Therefore, the debtor should be given a "new opportunity in life and a clear field for future reference, unhampered by the pressure of pre-existing debt— *Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970).* A Judgment is being entered dismissing this action.