**In re Stephen Alan CLEMONS, dba Clemons Marine Sports, SS # 269–60–4851, ENI # 31–0946561, Debtor.**

**Harold JARNICKI, Trustee, Plaintiff,**

v.

**Stephen Alan CLEMONS, et al., Defendants.**

**Adv. No. 1–82–0126.**

**Related No. 1–81–01348.**

United States Bankruptcy Court, S.D. Ohio, W.D.

July 12, 1984.

Ronald L. Burdge, Franklin, Ohio, for plaintiff.

James L. Flannery, Lebanon, Ohio, for defendants.

Harold Jarnicki, Lebanon, Ohio, interim trustee.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff in this adversary proceeding is trustee in an underlying Chapter 7 case filed May 14, 1981, in which the debtor is Stephen Alan Clemons dba Clemons Marine Sports, (hereafter "Clemons Marine"). Two defendants are named in this proceeding. One is debtor Stephen Alan Clemons, while the other is his father, Simpson Clemons. For convenience, the defendants will hereafter be referred to by their first names.

The complaint contains three claims. In the first claim, plaintiff objects to the discharge of Stephen. The basis for this claim is the allegation that debtor violated 11 U.S.C. § 727(a)(2), in that he concealed assets with intent to hinder, delay or defraud creditors. Additional grounds alleged for the first claim involve application of 11 U.S.C. § 727(a)(3) and 727(a)(4), but no evidence was introduced at the trial in support of these allegations. We therefore disregard the additional grounds. The second claim is one to avoid an alleged preferential transfer under 11 U.S.C. § 547. The third claim apparently seeks turnover of property of the estate pursuant to 11 U.S.C. § 542. The proceeding came on for trial at the conclusion of which we reserved decision.

The parties entered into a stipulation of fact (Doc. # 26a). We find the following facts, derived from the stipulation, and thus not contested. Stephen formerly operated a business known as Clemons Marine Sports (hereafter "Clemons Marine") from premises owned by his father, defendant Simpson. Stephen and Simpson entered into a certain agreement on August 11, 1980. In that agreement, Simpson is identified as "purchaser", while Stephen is referred to as "seller". The agreement contains a recitation that the seller had previously borrowed $65,500.00 from the purchaser to finance his "marina" business. It is additionally recited that seller desired to sell all assets, equipment, tools, and accounts receivable of such business, and that purchaser in consideration of the purchase of all assets, equipment, tools and accounts receivable of the business, forgives and cancels $50,000.00 of seller's total indebtedness. Further, the agreement recites that purchaser does not assume any contingent debts of the business or any debts or liabilities of the seller arising from the business. We interject at this point a finding of fact not derived from stipulation. The purpose of the transaction embodied in the agreement of August 11, 1980 was to give to Simpson all of the assets of Clemons Marine and prevent them from being subject to claims of other creditors of Clemons Marine.

Further facts derived from the stipulation are that on September 22, 1979 Simpson borrowed $66,500.00 from Huntington

National Bank of Franklin Ohio, collateralized by a mortgage on his real estate. He used $28,907.00 of the loan to repay existing floor plan financing arrangements made by Stephen on behalf of his marina business. Huntington Bank had an existing floor plan financing arrangement for inventory of the marina business at the time of the September 22, 1979 loan, and part of the debt on the existing financing arrangement was delinquent and past due when the September 22, 1979 loan was made.

Additionally, we find from the stipulation the following facts. On September 10, 1980, Simpson borrowed $25,000.00 from the First National Bank of Warren County Ohio, also collateralizing this debt with a mortgage on his real estate. Of that loan, $14,013.48 was used to repay existing floor plan financing arrangements made by Stephen on behalf of his marina business, and co-signed by Simpson. At the time of this loan, there was a pre-existing indebtedness to First National Bank which was delinquent and past due. Simpson is an unsecured creditor of Stephen. It is further stipulated that, Stephen was insolvent at the time that he and Simpson entered into the August 11, 1980 agreement, and Simpson had reasonable cause to believe that Stephen was insolvent at that time. Simpson received more than he would receive if the transfer had not been made by the transfer referred to in the August 11, 1980 agreement, and payment of his debt was made to the extent provided by the provisions of the Bankruptcy Code. It is also stipulated that the transfer referred to in the August 1980 note was for and on account of an antecedent debt owed by Stephen and Simpson before the transfer.

We also find the following facts, which we cast as a narrative statement derived from the stipulation entered into between the parties and the evidence at the trial. What happened here is that Stephen entered a business called Clemons Marine, the nature of which was the sale of boats and marine equipment. Stephen had no financial resources and his father, Simpson, allowed the use of his credit as a basis for the conduct of the business. Thus, Clemons Marine purchased boats and trailers for which floor plan financing was provided by banking institutions, the floor plan financing depending upon Simpson's credit. In furtherance of this arrangement Simpson co-signed on the loan obligations for such acquisitions. In addition, Simpson subsequently paid off loan obligations of Clemons Marine. No document is to be found in the evidence which establishes the relationship between Stephen and Simpson with regard to the various transactions to which they were parties.

After due consideration we have concluded that the money which Simpson provided and paid on the purchase price of boats and trailers was by nature a loan to Clemons Marine. This follows from the basic fact that it is uncontested that Clemons Marine was Stephen's business, and Simpson had no proprietory interest therein. We couple with this the further fact that title to the boats and trailers and other property which were purchased by the business was at the time of acquisition taken in the name of Clemons Marine. While Simpson may have financed the original purchase of that personal property, the record shows no property interest in Simpson at that time. Simpson's advancement of funds and credit to the business thus was a loan.

1. Preference.

We deal first with the question of preference. The definition of a preference appears at 11 U.S.C. § 547(b):

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

From the facts as stipulated by the parties, the presence of all of the elements of a preference are conceded by defendants to exist except the time element. After a review of the evidence we have concluded that this element also is met. That is, the preferential transfer, which was to an insider, occurred within a year of the filing of the petition.

■ The August 11, 1980 agreement refers to the transfer of assets, and the only reasonable inference to be drawn from the agreement is that the transfer was contemporaneous therewith. While Stephen and Simpson testified that the actual transfer was prior to the date of the document, there is no other evidence to corroborate that, and we find their testimony not to be worthy of belief. Defendants contend that the burden is upon plaintiff to prove that the time element of a preferential transfer is present, and plaintiff has failed to carry that burden. We disagree. Plaintiff has, with the August 11, 1980 agreement, made out a prima facie case of preference. Defendants are the only ones with access to contrary evidence, yet they offered no business records showing disposition of either physical assets or accounts receivable of the business. Defendant Simpson cannot without persuasive evidence, escape liability for a preferential transfer by the contention that plaintiff has failed to prove when the transfer occurred.

■ Having concluded that there was an avoidable preference, the consequences are determined by 11 U.S.C. § 550(a)(1):

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

\*      \*      \*      \*      \*      \*

The plaintiff looks to the August 11, 1980 agreement to establish the value of the assets which were the subject of the preferential transfer. That agreement assigns a value of $50,000.00 to those assets. By showing this, plaintiff has made out a prima facie case of value, and the burden shifts to defendants to show otherwise. Without offering any documentary evidence or business records to support a lower valuation, Stephen, in his testimony, stated an valuation of some $40,000.00. Simpson estimated $20,000.00 at the time of execution, with present value of $6,000.00. This testimony is inadequate to sustain defendant's burden to show a lesser value than stated in the agreement by which the transfer was accomplished. Neither Simpson nor Stephen offered any basis for his opinion other than his subjective attitude. The opinions were totally self-serving and after observing the witnesses at the trial we are unwilling to accept them. For present purposes, then, we set the value of assets transferred to Simpson at $50,000.00.

## 2. Denial of Discharge.

11 U.S.C. § 727(a)(2)(A) provides as follows:

(a) The court shall grant the debtor a discharge, unless—

\*      \*      \*      \*      \*      \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

\* \* \* \* \* \*

In *In re Reed*, 18 B.R. 462, 463 (Bankr.E. D.Tenn.1982), it is stated that under this statute, four elements are required to be proven:

1. A transfer of property has occurred;
2. It was property of the debtor;
3. The transfer was within one year of the date of filing of the petition;
4. The defendant had, at the time of the transfer, the intent to hinder, delay or defraud a creditor.

*See also*, 4 Collier on Bankruptcy (15th ed.) ¶ 727.02[b], p. 727–10.

■ The plaintiff has the burden of proving his objection to a discharge. Bankruptcy Rule 4005. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983), *In re Harron*, 31 B.R. 466, 468 (Bankr.D.Conn.1983), and 4 Collier on Bankruptcy, (15th ed.) ¶ 727.-14[6], p. 727–87. In addition, the provisions relating to discharge are to be construed liberally in favor of the debtor and strictly against the creditor. *In The Matter of Decker*, 595 F.2d 185, 187 (3rd Cir.1979), *In The Matter of Jones*, 490 F.2d 452, 456 (5th Cir.1974), *In re Harron*, 31 B.R. 466, 468 (Bankr.D.Conn.1983), *In re Hays*, 31 B.R. 285, 288 (Bankr.E.D.Tenn.1983), *In re Kunec*, 27 B.R. 650, 652 (Bankr.M.D.Pa.1982), and 4 Collier on Bankruptcy (15th ed.) ¶ 727.01A, p. 727–9.

In this case, that there was a transfer is clear from the language of the August 11, 1980 agreement, as is the fact that it was property of the debtor that was transferred. In addition, we have already found that the transfer was within a year of the date of the filing of the petition.

■ The final element under § 727(a)(2) is that the transfer was made "with intent to hinder, delay, or defraud a creditor." While it is well settled that the intent must be actual fraudulent intent as opposed to constructive intent, *In re Martinez*, 31 B.R. 299, 301 (Bankr.D.Vt.1983), *In re Hess*, 21 B.R. 465, 467 (Bankr.W.D.Va.1982), *In re Reed*, 18 B.R. 462, 464 (Bankr.E.D.Tenn. 1982), *In re Tuttle*, 15 B.R. 14, 16 (Bankr. D.Kan.1981), aff'd, 698 F.2d 414 (10th Cir. 1983), 4 Collier on Bankruptcy (15th ed.), ¶ 727.02[3], p. 727–12, such intent may be proven by circumstantial evidence or in other words, an inference may be drawn from the debtor's actions, *In re Packard*, No. B–1–79–31, slip op. at 6 (Bankr.S.D.Ohio, entered Oct. 15, 1979), *In re Reed*, 18 B.R. 462, 464 (Bankr.E.D.Tenn.1982), *In re Bernson*, 15 B.R. 100, 101 (Bankr.S.D.Fla. 1981), *In re Rubin*, 12 B.R. 436, 441 (Bankr.S.D.N.Y.1981).

■ In an effort to meet his burden as to intent, plaintiff argues first that the requisite intent can be inferred from the fact that Simpson "took over" Stephen's bank debts, debts on which Simpson was already obligated, as consideration for transfer to him, Simpson, of the assets of Clemons Marine, and thus, no consideration was actually given to Stephen by Simpson for those assets. Plaintiff then cites 4 Collier on Bankruptcy (15th ed.) ¶ 727.02[3], p. 727–13 for the proposition that a gratuitous transfer raises a presumption of the presence of fraudulent intent. Secondly, plaintiff argues that fraud can be inferred from the fact that though Stephen conveyed the assets of Clemons Marine to Simpson on August 11, 1980, he still had boats of Clemons Marine titled in his name after that date and moreover failed to show those legal titles in his bankruptcy schedules. We are not persuaded by these arguments.

First, it cannot be said that there was no consideration which came to Stephen as a result of the transfer of assets to Simpson. While it is true that Simpson was already obligated on the loan paper, it is also true

that it was part of the transaction that Stephen be relieved of his obligation on that paper. Thus was there consideration to him. Secondly, we note and believe the testimony that boats remained in Stephen's name after the transfer to Simpson because completion of the legal transfer would have resulted in a substantial tax expense, an expense which neither Stephen nor Simpson was in a position to bear.

3. Lien for Improvements

 It is the position of defendants that when Simpson paid off secured creditors whose loans were secured by assets of Clemons Marine, he thereby acquired a lien in the collateral pursuant to 11 U.S.C. § 550(d)(1)(A) and (d)(2)(D). It suffices to dispose of this contention to point out that for § 550(d) to be operative, it is required that the transfer be to a "good faith transferee." By no stretch of the imagination can it be said that Simpson qualifies as a good faith transferee. He is the father of debtor. He co-signed with Stephen on security instruments by which Clemons Marine acquired the inventory which was transferred. It was on his credit that Clemons Marine operated. The purpose of the transfer was to defeat claims of other creditors and the transfer was engineered by Simpson. Under these circumstances, clearly Simpson was not a good faith transferee.

\*     \*     \*

In light of the foregoing discussion we hold that the transfer of assets of debtor to Simpson Clemons was preferential per 11 U.S.C. § 547, and that Simpson Clemons acquired no lien in the assets transferred pursuant to 11 U.S.C. § 550. Plaintiff is entitled to recover $50,000.00, representing the value of the transferred assets, from defendant Simpson Clemons. The complaint will be dismissed insofar as it seeks to deny debtor's discharge. The complaint will also be dismissed with respect to the third claim, that based on 11 U.S.C. § 542, since no evidence was presented to support the claim that the property in question was property of the estate.

The foregoing constitutes our findings of fact and conclusions of law.