**In re: Peter H. BANDY, aka Peter Hugh Bandy, dba Saalfield Square Motors, dba Saalfield Square Properties, dba Betha Company, dba Summit Air Services, dba Summit Computer Composition, Debtor.**

**Richard I. KUHN, Trustee of Crane Howard Lithograph Company, Plaintiff,**

**v.**

**Peter H. BANDY, Defendant/Debtor.**

**Bankruptcy No. 584–1050.**
**Adv. No. 584–0219.**

United States Bankruptcy Court,
N.D. Ohio.

Feb. 28, 1986.

James L. Bickett and Dale Wilson, Akron, Ohio, for defendant/debtor.

David Hunter, Akron, Ohio, for plaintiff.

### FINDING AS TO OBJECTIONS TO DISCHARGE

H.F. WHITE, Bankruptcy Judge.

A trial was held on February 25, 1986 on Counts I, II, and IV of the complaint objecting to discharge of the debtor, Peter H. Bandy, by Richard I. Kuhn, trustee of the estate of Crane Howard Lithograph Company. Appearing on behalf of the trustee was David M. Hunter, and on behalf of Peter H. Bandy, James L. Bickett and Dale V. Wilson. At the close of all evidence, the plaintiff moved for admission into evidence of all his exhibits. The court admitted into evidence the following exhibits: Plaintiff's Exhibits 1, 4, 6, 7, 8, 9, 10, 13, 13(a), 13(b), 13(f) and 13(g). The defendant then moved for a directed verdict as to Counts II and IV which motion was granted by the court. The plaintiff presented no evidence as to Count I. Based upon the pleadings, briefs, oral testimony and exhibits admitted into

evidence at trial, the court makes the following Finding of Fact and Law.

## FINDING OF FACT

1. On March 22, 1984 The Crane Howard Lithograph Company (herein "Crane Howard") filed its petition for relief under chapter 11 of title 11 of the United States Code which was later converted to a case under chapter 7 on March 25, 1985.

2. On September 7, 1984 Peter H. Bandy filed his petition for relief under chapter 7 of title 11 of the Code.

3. Mr. Bandy owned a controlling interest in Crane Howard from 1973 until on or about February 14, 1984, initially as an 80 percent shareholder and finally as a 97 percent shareholder.

4. Crane Howard was a custom printing establishment, and among its clients were Goodyear Rubber Company, Standard Oil, Ohio Bell Telephone Company, Borden Foods, Rex Humbard Foundation, PTL Television Network, and Arocom.

5. In November, 1980 Mr. Bandy on behalf of Crane Howard entered into an agreement with Union Commerce Bank nka Huntington National Bank (herein "Bank") which provided Crane Howard with a line of credit valued at 80 percent of its "qualified accounts receivable" plus a certain percentage of the value of its inventory. The line of credit was established on a revolving basis depending upon the current value of the accounts receivable, and it varied from approximately $1.1 to $1.3 million. The phrase "qualified accounts receivable" was defined by the Accounts Receivable and Inventory Security Agreement between the parties as meeting certain specifications, *inter alia* that the goods sold to create the account receivable had been shipped to the account debtor. Plaintiff's Ex. 4.

6. Crane Howard would report its accounts receivable activity, and report all cash received, daily to the Bank under the direction and supervision of Mr. Bandy.

7. The accounts receivable activity of Crane Howard was also subject to periodic review by the Bank's auditors. The auditors would reconcile the receivables against the daily report by checking the business records of Crane Howard, and perform a test procedure as to the validity of the receivables. Crane Howard always cooperated by providing any and all records requested by the auditors. Through this periodic review, the Bank established the eligible base for the revolving line of credit.

8. In addition to its security interest in the accounts receivable, inventory, equipment and works in process of Crane Howard, the Bank also held a secured position in a certain wet press and in a 29 acre farm located in Stark County and owned by Mr. Bandy.

9. It was the practice of Crane Howard to generate computer invoices for some works in process, to retain these invoices, to report the relevant accounts to the Bank as qualified accounts receivable, then to later credit the original invoice and reissue a new invoice for the same goods which second invoice was sent to the customer at or near the time of shipment. This "prebilling" practice had gone on for a number of years, and was necessary at times to accommodate the larger corporate customers which were slow in generating purchase orders and which sometimes asked Crane Howard to warehouse the orders.

10. The Bank was aware of this pre-billing procedure and acquiesced in this practice. Robert J. Graham, Vice President of asset-based lending, business development and administration of secured borrowers for the Bank from August, 1983 until September, 1985, first became aware of this pre-billing practice in mid-September, 1983 from the Bank's own audit. The Bank never told Mr. Bandy not to pre-bill, nor did it cut off Crane Howard's line of credit.

11. In mid-January, 1984, Mr. Graham discussed with Mr. Bandy an Arocom invoice for $140,000 dated November 30, 1983 for pre-billed goods which appeared on the Bank's audit report, but did not threaten to cancel the line of credit, nor did he credit the account back to the debtor.

12. There was some evidence presented that it was an industry practice to pre-bill accounts and to hold completed orders for drop-shipment later at the customer's request.

13. Mr. Bandy owned another business entity known as Saalfield Motors dba Alpha Press. The books of Crane Howard show a transfer of some real estate valued at $110,210 and investment vehicles valued at $94,000 to Crane Howard, and a corresponding reduction of an indebtedness of Alpha Press to Crane Howard. *See* Plaintiff's Ex. 10. The relevant corporate records cover a period ending December 31, 1982. The real estate was never transferred by deed to Crane Howard. The transfer of the vehicles by the car dealership (Saalfield Motors) was made at the Bank's request. The transfer of the vehicles appeared in the corporate minutes, but the titles to the vehicles were never transferred to Crane Howard. Mr. Bandy testified that the titles were not transferred to Crane Howard in order to save the otherwise payable 5½ percent sales tax on the transfer. Crane Howard had physical possession of only some of the vehicles. There was no concealment; all entries were documented on the corporate books and records of the debtor.

### ISSUE

Whether the plaintiff presented sufficient evidence on Counts II and IV of the complaint seeking a denial of discharge of Peter H. Bandy pursuant to 11 U.S.C. section 727 for falsifying the accounts receivable records of Crane Howard, and for his fraudulent transfer of certain assets to Crane Howard to reduce his personal indebtedness?

### DISCUSSION OF LAW

Richard I. Kuhn, trustee of the estate of The Crane Howard Lithograph Company and plaintiff, seeks a denial of discharge of Peter H. Bandy, debtor and defendant herein, for certain acts in violation of 11 U.S.C. section 727(a):

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

. . . .

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case concerning an insider; . . .

(Subsection 727(a)(7) was amended by Pub.L. No. 98–353, § 480(a)(2), to add the phrase "under this title or under the Bankruptcy Act" after "another case." This amendment is effective for cases filed after October 7, 1984. Pub.L. No. 98–353, § 553(a)).

The plaintiff presented no evidence as to Count I of the complaint, and the defendant was granted summary judgment on Count III of the complaint by this court's order of October 2, 1985. The only issues remaining for this court are whether the plaintiff has sustained his burden of proof as to the alleged falsification of the ac-

counts receivable records of Crane Howard, an insider, by Mr. Bandy, under 11 U.S.C. §§ 727(a)(3) and 727(a)(7), and as to Bandy's alleged fraudulent transfer of certain assets to Crane Howard to reduce his personal indebtedness to Crane Howard, under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(7).

The plaintiff carries a difficult burden under section 727. The keystone of the Bankruptcy Code is to give the honest debtor a discharge of his debts. The provisions denying a discharge to a debtor are construed "liberally in favor of the debtor and strictly against the creditor." 4 *Collier on Bankruptcy*, para. 727.01A (15th ed. 1985) (citations omitted). Bankruptcy Rule 4005 provides that at the trial on a complaint objecting to discharge, the plaintiff has the burden of proof. *See also, In re Clemons*, 42 B.R. 796 (Bankr.S.D.Ohio 1984). The ultimate burden of persuasion rests upon the plaintiff. *In re Glaser*, 49 B.R. 1015, 1018 (Bankr.S.D.N.Y.1985).

In Count II plaintiff alleges that Mr. Bandy falsified or caused to be falsified the accounts receivable records of Crane Howard in order to obtain additional funds from the Bank under the terms of a revolving line of credit. This is not a case of failure to keep proper books and records, but rather the intentional misrepresentation and falsification of corporate records to secure additional financing. In addition to knowing misrepresentations alleged by plaintiff, he must show an act of falsification of recorded information by the debtor or someone acting for him and that by the act complained of it is impossible to ascertain the financial condition and material business transactions of the debtor. 4 *Collier* at para. 727.03[4].

█ The plaintiff failed to show that Mr. Bandy's practice of pre-billing some accounts was a falsity, or misrepresentation, much less that this practice was carried out with intent to deceive the Bank, or that it did deceive the Bank. Evidence at trial showed that the Bank was aware of this practice of prebilling some accounts; the schedules indicate that the prebilling prac-

tice had gone on for years. The Bank's officer in charge of account-based lending testified that he discovered "pre-billings" in the second month of his tenure at the Bank through an audit performed by Bank personnel. Although he testified that the Bank was only aware of 2 or 3 day early billings, and there was evidence presented that some billings predated shipment by a much longer period of time, the Bank tacitly accepted this practice, thereby acquiescing in it. The Bank never told Crane Howard or Mr. Bandy that this practice violated the lending agreement between them, nor did it ask Crane Howard or Mr. Bandy to stop this practice, nor did it threaten to cancel the line of credit. Other pre-billings could have been discovered by the Bank's periodic audit, and indeed, a significant pre-billing to Arocom was discovered in late 1983. *See* Finding of Fact 11. Again, the Bank acquiesced. There was also evidence presented that it was an industry practice to pre-bill some customers. Mr. Bandy testified that some pre-billings were necessary due to warehousing of goods by Crane Howard for its customers, and the delay suffered by Crane Howard in receiving the purchase orders from large corporate customers. The plaintiff failed to show that Mr. Bandy knowingly misrepresented corporate records to secure a higher line of credit; in fact, the practice of pre-billing accounts and billing for works in process appears justifiable under the circumstances of this case. The plaintiff also failed to show that the Bank was misled by these practices, or that it could not ascertain the financial condition of Crane Howard. There was no evidence whatsoever that any employee of Crane Howard attempted to mislead the Bank's auditor; in fact, the auditor admitted that he was given free access to all records of Crane Howard. The Bank was aware of some of these practices and acquiesced in them, and at all times had free access to the business records of Crane Howard.

█ In Count IV plaintiff alleges that Mr. Bandy fraudulently transferred certain assets to Crane Howard to reduce his per-

sonal indebtedness to Crane Howard, and that these assets were assigned inflated values so as to maximize the reduction of his personal obligation to Crane Howard. The plaintiff failed to present any evidence as to the true or fair market value of these assets. The evidence further showed that the assets transferred on the corporate records of Crane Howard were actually the property of a separate entity, Saalfield Motors dba Alpha Press, and that the transfer served to reduce the indebtedness of Alpha Press to Crane Howard. Although there was evidence presented that Mr. Bandy was the controlling owner of this entity, there was no evidence presented sufficient to prove that it was merely the alter ego of Mr. Bandy. The plaintiff is required to prove four elements to state a prima facie case under 11 U.S.C. § 727(a)(2)(A), see *Clemons*, 42 B.R. at 800, not the least of which is actual fraudulent intent. The plaintiff presented no evidence of fraudulent intent. Indeed, the evidence showed that it was property of a separate entity that was transferred to Crane Howard to reduce its indebtedness, and the transfer was well outside of the one-year period prior to the filing of either of the petitions of Crane Howard or Mr. Bandy.

At the close of plaintiff's case the defendant moved for a directed verdict as to Counts II and IV. After reviewing all evidence in a light most favorable to the plaintiff, the court finds the motion to be well-taken. As the plaintiff presented no evidence as to Count I of the complaint, judgment will accordingly be awarded defendant on that count as well.

A separate order in accordance with the Finding will be entered.